Good morning, everyone. Please be seated. Sorry, we're starting a little bit late. We have the one case, so we will call it immediately. 122392, Segovia v. Romero. All right. If both the attorneys could step up and identify yourselves for the record. Good morning. I'm C.F. Schellis. I represent the defendant in your trial. Mr. Schellis. My name is Richard Krumbacher. I represent the plaintiff, Sylvia Segovia, who is the appellee. All right, Mr. Krumbacher. Good morning. Each of you will have about 15 minutes to present your arguments. And from that, Mr. Schellis, you may save some time for rebuttal. Two minutes. All right. Okay. Please proceed. May it please the Court, as I just said, I'm C.F. Schellis. Very briefly, this case is about this simple issue. A collateral source, and this is from the Wills case and just the general rule, is benefits received by the injured party from a source wholly independent of the tortfeasor. In this case, my client, his insurance company paid the med pay when he was sued. Well, when American Heartland, his own insurance company, paid the bill, he's not a source independent of the tortfeasor. He's the tortfeasor's insurance. So the example is this. A plaintiff has $10,000 in bills, goes to a jury, and $5,000 of those bills was paid by his own insurance. That's a collateral source. And the person can go to the jury and say, I want $10,000. And in the subsequent cases, like Wills and others, in that example, he comes to the jury and says, I have $10,000 in bills, $5,000 was paid by insurance. If there's a discount, like a Medicare discount or a group discount, he still gets the full amount. That's a collateral source. But in this case, Mr. Romero, my client, is the one who paid the money. He could have borrowed it from a friend. He could have gotten it from his parents. In this case, he got it from insurance. He paid the $5,000 med pay and got a release. Well, I thought it was divided up. It was divided up. So some went to the medical bills, and specifically some went to property damage, right? 2,300 of it. Everything was divided in half. So the bill was paid in half, so the med pay was $5,000, and that entire med pay was released. State Farm paid $5,000 of the medical bills. And we're entitled to a $5,000 set-off because that's the amount we settled. Wait, I'm not following that. We paid a sum of money to settle a $5,000 med pay claim. Oh, I see what you're saying. And the release released the entire med pay claim. Yeah. What the med pay claim was for was $5,000. I see. And so we're saying we're entitled to a $5,000 credit. The jury verdict was, I think, $5,600, and he's entitled to his $600. Why do you get a $5,000 credit when you only paid $2,500? Because we get the credit for the amount of bills that were paid. Otherwise, we're paying twice, and the collateral source rule doesn't apply to us because the money came from the defendant, not the plaintiff's insurance company. Why don't you only get a set-off for what you paid, though? Because otherwise there would be no point in settling a $5,000 case for $2,500. Otherwise, there would be no point in any defendant settling. In the first suit, though, it's not Sylvia who sued. It was her husband. Well, and that brings me to the next case, which is. . . Well, is that right or is that. . . Yes, it is correct. All right. But before we leave that point, though, I do want to get to that. But I just want to center for a second more on the difference. I understand that you want a reduction or a set-off for the whole amount because you settled that claim, and otherwise why would you settle? But what about that allocation, that $2,300 versus the total amount? There was an allocation for property damage. How do we resolve that? If you remand and ask the trial judge or require her to do a set-off, then I guess she can have a hearing and make that decision, or you can decide it. But the $2,300 paid the $5,000. In other words, because he only had a net pay. . . The $2,300 paid the $5,000, but then there was an additional amount, which would be what? Well, that was the property damage. Property damage, okay. But the reason you don't have to resolve it is the jury was not asked to award property damages. They didn't sue for it. No. If the jury had sought property damages, the injured party had sought property damages, and if there was an award for property damage, I'd ask you to set off the other portion as the property damage. But that never happened. Was the remainder. . . What was the remainder? Was it personal injury? No, the remainder was property damage, but the injured party never sued for it. Oh, it was. Okay. In this case, the car owner is Sylvia Segovia's husband, right? Correct, and that is the insured. That's the insured, and his car, the car he owned and was insured by. . . State Farm. State Farm. He suffered property damages because it's his car. Yes. So he filed suit against Romero. True? State Farm as his subrogate. Yes, State Farm. State Farm as his subrogate, not Sylvia's. But in Mariani, the court. . . Could you just answer that? Oh, I'm sorry. Yes. All right. So then State Farm sues as subrogate of the husband, and then explain to me how he could ever get. . . Now, this is a softball view. How could he ever get personal injury damages in this subrogation action? Why would State Farm be able to subrogate for personal injuries he never even suffered? Because State Farm paid those bills under the contract of insurance, and therefore under the provisions of the contract, and in the municipal case that's listed right in the complaint, they're the subrogate of those rights. And that leads me to your first question,  when it comes to setoffs and insurance. It's true it was his insurance. She was injured. She incurred the bills. But even though she incurred the bills, her husband's insurance paid them. And just as they seek. . . So did she. . . She obviously then had a right to sue for her own personal injuries. And she did, yes. And so there's nothing. . . You're not contesting her right to be able to sue for those personal injuries? Absolutely not. So she never settled with anyone for those injuries, did she? That's correct. Not as an individual. So she didn't settle with the tortfeasor? But the tortfeasor paid for those. Did she settle? No, she did not. All right. So then if she didn't settle with the tortfeasor, she goes into court and sues, and the jury only gave her damages for personal injury. The actual medical bills, yes. The actual medical bills. Why should she have to take anything as a set-off or accept a set-off? Because she didn't settle with the tortfeasor. But a set-off is not based on a settlement. A set-off is based on the fact that the responsible party, the tortfeasor, my client, already paid these bills. And I can give you this example. Let's say they didn't settle. State Farm stands here in front of the jury and says, here's my itemized verdict. I want $5,000 and some dollars for the bills. The injured party stands here and says to the jury, well, I was injured. I want $5,000 and some dollars for the medical bills. And a jury comes back, and they can't give them both $5,000 for the same medical bills against my client. He'd be paying the bills twice. Well, he only paid $2,500 once. Isn't that accurate? Yes. More of an accurate statement? Yes. And you're saying because he settled the $5,000, then he gets the whole set-off of $5,000 when he only paid $2,500. That's correct. Okay. However, I certainly understand the alternative position that he's only entitled to a $2,500 set-off. Yes. But either way, he's entitled to a set-off. And the key is the decision below is based on the collateral source rule, which doesn't apply because he is independent of that. You threw out a phrase that the husband and wife are considered one economic unit. What authority do you have for that? Well, in Muriani, that's what the court said. And that was cited by counsel. And it noted that for the purposes of insurance, most people get insurance through, let's say, their employer. But their wife, or if it's a woman, her husband, also has insurance. Well, this is a perfect example of that. It was his auto insurance and her medical bills, but his auto insurance paid for her medical bills. Otherwise, of course, if they weren't one economic unit, she couldn't seek repayment of the bills by any means because they were her husband's bills. But we don't look at it that way. We look at it as her bills, even though they were paid by his insurance. Why didn't they sue as a subrogee for both of them? Since they were paying medical bills that only belonged to her, why didn't they sue as subrogee on behalf of Sylvie as an insured under the policy? If I were the lawyer for State Farm, I would have done it that way, and that is my custom and practice. But that isn't how they did it. Let me ask another if I was the lawyer question. Maybe you weren't there that day, but when they settled the subrogation action, why didn't they get a release from Sylvie? Well, I wasn't there that day, and I wasn't the lawyer in the underlying case. But I think the reason is that most lawyers will only get the release in the name of the insured because that's what their insurance contract says. But since they paid her benefits, they could have requested or gotten a release. But here's the key. We were released for those bills, and our claim is being asked to pay it a second time. And again, I again come back to the example, if we're both standing in front of the jury, could they both get a line? So he has a release. Yes, he does.  And for those reasons, we believe the claim is true. And is his release for $5,000, or was it for $2,500? It's for all net pay and all property damages. Okay, but it doesn't give an amount. It doesn't give an amount, but as you see in the uncontested affidavit, that was the $5,000 in net pay. There isn't any other. What makes this case... But the release, even though it doesn't give an amount, it says it's for the medical bills. It's for the net pay. It says the entire... He's released for all the medical bills. That's correct. Because that's why he settled. And that would be another purpose for somebody to settle if he didn't get a set up. Otherwise, we'd just go to the jury with both parties. We would never settle a case. And so we want to incur a settlement. This is not a situation of the collateral source where I'm saying that somebody is getting a windfall. That's a collateral source issue. But that's why I think the briefs got off kilter, and why the judge below got off kilter, is it's simply not a collateral source because it's not a source, as the case says, wholly independent of the tortfeasor. The fact that American Heartland paid, or his friend paid, or whoever, doesn't really matter. Well, Heartland paid on his behalf. That's right. And for those reasons, we respectfully ask you to reverse the trial court. All right. Thank you. Thank you. Mr. Krumbacher? Good afternoon, Mr. Court. My name is Richard Krumbacher, and I represent Sylvia Segovia, the plaintiff in the underlying action and the appellee in this case. Because this matter is brought here by the appellant, it is his burden to prove the issues that he wants this court to decide in his favor and his client's favor. And the issue of the setoff for subrogation that has been paid by an underlying carrier, that subrogation can arise by contract. Insurance companies, like, for example, State Farm, if there had not been an underlying issue, could have come here or could have come to the trial court and asked for a setoff based on the contract, which gives them the subrogation right. In the alternative, if American Heartland has paid some of that money, they have a right to intervene in the underlying matter and assert whatever setoff they wish to setoff. But they didn't do that. American Heartland isn't here. They were not part of the underlying case that went to trial. They're not here today. They're here on behalf of Hector Romero. Why does Mr. Romero, though, have to pay twice for the medical bills? He's already paid $2,500 for those medical bills. Well, we have no actual proof of that. The affidavit says that 5,000. Well, who did Heartland pay the money for? They're insured. They paid for Hector Romero. Right. $5,383.10 for medical and property damage. Right. And doesn't the release or the order or the, yeah, the order settling the case allocate $2,500 for the medical bills? No. No? Don't sworn documents that are in the record indicate that $2,500 was paid for the medical bills and then $2,300 or whatever other amount was? They indicate that the underlying case was settled on a 50% basis, but it does not specifically say $2,500 for medical. Oh, cool. And as I say,  The amount is not delineated. At some point, though, would you concede that Romero has paid an amount of money through his insurance company for medical bills that only Sylvia has? Yes. I would admit that American Heartland has paid an amount of money, which includes release for the amount of the medical pay benefits that were paid by State Farm for her medical bills. So then why should they pay it again? Because they didn't do it right. Because they didn't intervene in the underlying matter. Well, why shouldn't we remand it for a hearing for Romero to be allowed to establish the amount that he actually paid? Well, because American Heartland has attorneys, and they had every right to do that over the years going back to whenever this was, April of 2010. He exercised that right in the jury trial when he was sued for a second time, although by a different party, but by the party that suffered the personal injuries. I mean, is there any dispute that her husband has no medical bills related to the property damage or the automobile accident? No, her husband has no medical bills. That is undisputed. So then, I mean, how can you say that those medical bills weren't paid on behalf of Sylvia, and the one person that paid them was the tortfeasor? The insurance company is representing the tortfeasor when they pay that money. Hector, it came out of his pocket because he's the insured. He paid the premiums. He's the one that expects to turn to his insurance company when he's sued for, you know, personal injury or property damages as a result of a car accident. Right, and American Heartland is just as on the hook for the judgment as they were for this underlying suit by State Farm, and they had their right to protect themselves, and they didn't do it. So you're saying that in the suit, the insurance company wasn't there with Hector holding his hand all the way? I think they have a right to intervene where they are not protected by a contractual right. They don't have privy of contract with Sylvia Segovia. But at the trial level, they weren't defending Hector? Well, I believe, typically speaking, they were. In the state of Illinois, we don't call it that. Right. And we have a process by which they could have intervened. Didn't they have a duty to defend him? Yes. All right. So they were actually defending him in this suit? Yes. All right. So I don't know how you can say they weren't when they were. I'm not saying that they weren't. I'm saying that the right has not been protected. Well, when they ask for a setoff, they're really representing him. Why aren't they entitled to the setoff? Because they paid that money. They paid a portion of those medical bills in a previous suit. They paid her husband. He doesn't have any medical injuries. I mean, personal injuries, rather. Yes. But he is the name insured, and he was on the release, and that's who settled the underlying case was her husband via State Farm. Well, Mr. Schell says that under Miriani that the husband and the wife are one economic unit. And if they paid the husband, they paid the wife. I don't believe there's any privilege of contract between American Heartland and Sylvia Segovia. I don't believe American Heartland steps into State Farm's shoes. So you think that the proper result here is that Sylvia should get paid, as well as her husband, for the same injuries? Well, as it's also pointed out. You think that's really an appropriate result? In brief, it's also pointed out that we have a lien through the city of Chicago from the Koukankos, or Coughlin Law Firm, for $2,600 of additional medical that was also paid. How many medical bills did she actually have? I don't have the total amount. Wasn't it 5,000? It was well above that. It was more like 7,000, 7,500. Well, I didn't see that anywhere in the briefs or the record. It is argued in my brief that the total amount of recovery care for the plaintiff is going to be minimal. All right. Well, let me ask you this. Is there a public policy in the state of Illinois that limits a plaintiff to one recovery for a single injury? Yes. Okay. So we know the husband never had any personal injuries. Yes. But he's getting a chunk of money for his wife's injuries. Well, State Farm got a chunk of money, yes. Well, after they paid him the money. Didn't State Farm pay him money initially and then they sought subrogation? They paid for his car and they paid for his wife's medical bills. They didn't actually send any money to him personally. Okay. So they paid for medical bills. And then they went into court and filed their subrogation action. Yes. It's based on their right by privative contract that guarantees them the subrogation right they filed their suit. So if her medical bills were paid at some point by the insurance company that represented Mr. Segovia, and then there's another action and a jury awards her money for personal injuries, but the insurance, Mr. Segovia's company, has paid for those medical bills, is there a violation of public policy here or not? I don't believe there is. Okay. Because they were already paid and now she's getting the same amount of money. With all due respect, I still disagree that she's getting a dual recovery. I think State Farm got some money and I think she has been awarded a small verdict, but I don't see those as the same person. I don't see State Farm as somebody. But how does a person get medical bills paid when they don't have any medical bills to begin with? I'm sorry? How can you say that those were paid on behalf of him? They were paid by State Farm and I believe that the recovery was by State Farm and that she at this point has received nothing from anyone and is likely to continue to receive very little or nothing from anyone. Who's going to get nothing? Sylvia Segovia. By the time that we settle whatever we need. But her bills are paid. The bills that were paid are paid, right? By State Farm and by the City of Chicago. Yeah, so they're paid. So why should she get anything? I mean, her bills are paid and that's the result of the litigation. Why should she also get paid again? That's the vexing question here. I mean, if her bills are paid, the purpose of the litigation, regardless of whether or not she participated in that initial litigation, the purpose of the litigation was to get her bills paid and her bills got paid. Now she's saying, well, I wasn't involved in that so now I want more money. So isn't that a double recovery? If her bills are already paid? Personally, I have a hard time seeing it that way and I believe I can understand the court's rationale. Let me ask you this. Here's an interesting question. How is it that State Farm in the subrogation action can claim, when they sue on behalf of Rodolfo, that Rodolfo, I mean, I read the underlying complaint in the subrogation action. It seems like they claimed that Rodolfo was injured, although we know that that's not the case. Is that a common practice that they throw in their insurance name even though he wasn't the driver? Your Honor, I have very little knowledge of how subrogation claims are claimed, so I can't answer that. Let me ask you this. The trial court said when it gave its finding, it said, it's the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. Where's the windfall for the tortfeasor if he gets this set off? Again, if I may, my opponent is asking for $5,000 in set off. I think that would definitely be a windfall. Would $2,500 be a windfall? I believe at an earlier point in this matter I actually argued for that amount, and I was overruled and shouted down. Well, let me ask you this. Did you try this case? Yes, I did. All right. Now, you said that the actual personal injury medical bills total something like $7,500? Well, I don't have that in front of me, Your Honor, but I know that the city paid $2,600 and I know that State Farm paid $5,000. Okay. So why did the jury only give her this other amount? They didn't give her anything except medical bills, right? I've given up years ago. I can't guess what it is or why. All I know is that the total of med pay and city lien was about $7,600. Okay. But the jury maybe they actually gave her about $2,500 less than what was out there. Yes, and I'm not sure why. All right. At this point, it's been a long time since that case was tried. So once again, I think that if American Heartland had intervened in this matter, that we would be in a very different situation. Or if, as Your Honor asked, they had placed Sylvia's name on the underlying release, perhaps the situation would be different. But those two things were not done. For that reason, I would ask that the appeal be denied. Okay. Thank you. Briefly? Very briefly. Number one, your question was, is the check denominated between the property damage and the med pay? It's right on the check, which is part of the record. The 2383 is on the check, which denominates the coverage and the amount. Number two, American Heartland is not a party defendant. It can't be a party. This is not a direct action state. We have tens of thousands of cases, and an insurance company is never a party. No, but aren't they defending? Didn't they defend him in this suit? Yes, and they speak for Mr. Romero, but they're not an independent party. No, I understand that. They can't intervene. Thirdly, the third record question is the bills. If you look at the intake order, which is the 218 order to start the jury, there's 5,000 in some bills, the exact amount of bills that State Farm paid. They are the exact same bills that are in the Rule 90 package of the Subro case and the personal injury case. The intake order contains no other bills. Well, why did the city come in and intervene and say we paid 2,500 or some number around that? I have no idea. But the only bills that they sought, Lutheran General and the other ones, are the exact same bills that State Farm paid. Well, what was the city paying? I don't know if they paid other bills that she didn't present to the jury, but the intake order only contains the bills that State Farm paid, and they're listed and denominated so you can compare the two at the exact same bills. And counsel's right. His client doesn't get much, but that was the jury verdict. They didn't get pain and suffering. They didn't get loss of a normal life. That's his problem. He tried the case. It's not for us to fix. A set-off should not be denied because they got a poor jury result. And I don't mean to be disrespectful to counsel, but that's not a reason to deny the set-off. Thank you. All right. The case is well-argued, well-briefed. We'll take it under advisement. Thank you.